**NOT INTENDED FOR CITATION OR PUBLICATION**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT LONDON

| | |
|---|---|
| MARK CLOYD, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 6: 05-667-DCR |
| ) | |
| V. ) | |
| ) | **MEMORANDUM OPINION** |
| D.L. STINE, Warden, ) | **AND ORDER** |
| ) | |
| Respondent. ) | |

\*\*   \*\*   \*\*   \*\*   \*\*

Mark Cloyd, who is currently incarcerated in the United States Penitentiary-McCreary ("USP-McCreary") in Pine Knot, Kentucky, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. [Record No. 1] [1] The Petitioner challenged the United States Parole Commission's ("USPC") use of an "upward departure" from its established guidelines which resulted in postponement of his presumptive parole date by 45 months. Cloyd argued that the statutory provision upon which the USPC relied violated the Ex Post Facto Clause and his right to due process of law as guaranteed by the Fifth Amendment to the United States Constitution.[2] Specifically, he alleged that the USPC's decision was based upon the "good

---

[1] The named Respondent is D.L. Stine, the Warden of USP-McCreary. He is represented by the Office of the United States Attorney for the Eastern District of Kentucky. For the sake of simplicity, the Court will refer to the Respondent as the United States.

[2] On July 12, 2006, the Court entered a Memorandum Opinion and Order [Record No. 12] and Judgment [Record No. 13] dismissing this proceeding on the merits. By Order entered that same date [Record No. 14], the Court vacated and set aside the Memorandum Opinion and Order and Judgment to consider the

1

cause" provision of 18 U.S.C. §4206(c),[3] which provision is contained in the November 1, 1987, *amendment* to §235(b)(3).

The Petitioner argued that while the 1987 amendment authorizes the USPC to set release dates *outside* of the USPC's Guideline range for "good cause,"[4] it did not apply to prisoners like him, who had committed their offenses *prior to* November 1, 1987. He argued that §235(b)(3) should only be applied to prisoners who had committed offenses after its enactment on November 1, 1987. Thus, the Petitioner claimed that the USPC's application of the 1987 amendment to him amounted to an *ex post facto* 45-month increase to his sentence.

The issues have now been fully briefed and are ripe for review.

### The United States' Response to Petition [Record No. 10]

The United States argues that the USPC was authorized to go above the Petitioner's guidelines and require that he serve an additional 45 months (over his 230-month guideline maximum) before release on parole. The United States further asserts that the Third Circuit's decision in *Lyons* failed to take into consideration the critical fact that Congress enacted several statutes (both before and after the rendition of the *Lyons* decision) which continued the existence

---

Petitioner's arguments set forth in his submission filed of record on July 10, 2006. [Record No. 11]

[3]  On December 7, 1987, section 235(b)(3) was amended to delete the clause requiring the Commission to set release dates *within* the guideline range. *See* Sentencing Act of 1987, Pub.L. 100-182, §2(b)(2), 101 Stat. 1266 (1987) (1987 amendment). The amended section 235(b)(3) requires the USPC to set release dates "pursuant to section 4206 of Title 18 United States Code," which permits release dates *outside* the Guideline range.

[4]  18 U.S.C. §4206 (c) provides:

> The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: Provided, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

of the USPC. Because of the enactment of these various statutes, the United States contends that *Lyons* is not persuasive authority. Further, the United States argues that even if it were, the Sixth Circuit has adopted a different approach which this Court is bound to follow regardless of the Third Circuit's decision.

<u>Petitioner's Reply to United States' Response [Record No. 11]</u>

The Petitioner filed an eight-page Reply in which he essentially reargued the claims he asserted in his original petition that his claim that *Lyons v. Mendez* precluded the USPC from extending his sentence beyond his original guidelines. To that end, the Petitioner emphasized that, because the pertinent sections of §235(b)(3) became effective on October 12, 1984, the USPC's application of the "good cause" provision to his case amounted to unconstitutional *ex post facto* activity. The Petitioner devoted the first six pages of his submission to a discussion of the legislative history of the repeal of the USPC. He cites several cases in support of his position, including *Romano v. Luther*, 816 F.2d 832 (2nd Cir. 1987). In *Romano*, the Second Circuit held that the petitioner-prisoner was premature in asking for a release date several years in advance of the then-expiration date of October 31, 1992.

## DISCUSSION

The relevant question is whether, the Petitioner was entitled to a release date within his parole guidelines or whether the USPC was authorized to set a release date outside of the Petitioner's guidelines. Having fully considered and evaluated the Petitioner's Reply Memorandum, the Court nevertheless determines that the arguments which the Petitioner advances are unconvincing. The Court agrees with the United States that the USPC acted within its authority by departing above the Petitioner's guidelines.

1. <u>The USPC's Actual Abolition is a Necessary
Precondition for Section 235(b)(3) to Take Effect</u>

The Petitioner claims that, according to the holding in *Lyons v. Mendez*, the USPC improperly set his release dates *outside* the USPC's Guideline range. In *Lyons*, the prisoner committed his federal offense in 1986. He was supposed to be released in 1998. However, the USPC decided that based upon the nature of Lyons' offenses, it would depart above its Guidelines. The USPC informed Lyons that he would have to serve until his mandatory release date in July 2009, more than 10 years beyond the maximum term in his parole guideline range. The USPC relied on the 1987 amendment to §235(b)(3), which allowed for an upward departure. (The original 1984 provision of §235(b)(3) did not allow a departure beyond the Guideline range.)

Lyons argued that the original version of §235(b)(3) took effect upon enactment of the SRA in 1984. *Lyons*, 303 F.3d at 288. "If, as Lyons argues, the law in effect in 1986 was the original §235(b)(3), requiring dates within the guideline range, then Lyons was clearly disadvantaged when the Commission relied on the 1987 amendment to postpone his release over ten years beyond the guideline's maximum of 148 months." *Id*. The Third Circuit agreed with Lyons' position that the 1987 amendment operated as an *ex post facto* law when the USPC applied it to postpone his release date beyond his maximum guideline range.

The Third Circuit held that application of the 1987 amendment of §235(b)(3) fit the two criteria of an unconstitutional *ex post facto* law. First, the USPC had *retrospectively* applied the 1987 amended version of §235(b)(3) in order to justify the upward departure, even though Lyons' offenses had been committed in 1986. *Id*. The Court analyzed the history and purpose of the 1987 amendment and determined that the original version of §235(b)(3) took effect on

October 12, 1984, the date the SRA was enacted. *Id.* at 292. Second, the Court determined that the USPC's application of the 1987 amendment to Lyons had clearly disadvantaged him, because "it permitted the Commission to set his release date beyond – rather than within – the guideline range." *Lyons* at 293.

Like the petitioner in *Lyons*, Cloyd argues that while the 1987 amendment authorizes the USPC to set release dates *outside* of the USPC's Guideline range for "good cause," it does not apply to prisoners like him who had committed their offenses prior to November 1, 1987. And like the petitioner in *Lyons*, Cloyd argues that §235(b)(3) should only be applied to prisoners who had committed offenses after its enactment on November 1, 1987. However, the Court must reject this argument.

Prior to November 1, 1987, the Parole Commission and Reorganization Act of 1976 ("PCRA"), 18 U.S.C. §§4201-4218 (1982), established federal sentences. The "good cause" provision, contained in the November 1, 1987 *amendment* to §235(b)(3), allows the USPC to set a release date beyond the established guidelines. Congress changed much of the PCRA of 1976 when it enacted the Sentencing Reform Act of 1984 ("SRA"), effective on November 1, 1987. The SRA abolished the USPC and repealed most of the statutes governing sentencing. *Dunne v. Olson*, 67 Fed. Appx. 939, * 941, 2003 WL 21018210, **1 (7th Cir. 2003) (unpublished order).

On December 7, 1987 (only thirty-six days after the SRA of 1984 became effective), Congress passed the Sentencing Act of 1987 which modified §235(b)(2) of the SRA of 1984 in a manner that returned sentencing law to its pre-SRA state for pre-SRA sentenced prisoners. *Dunne v. Olson*, 67 Fed. Appx. 939, *943, 2003 WL 21018210, **1 (7th Cir. 2003) (unpublished

5

order) (citing *Norwood v. Brennan*, 891 F.2d 179, 180-82 (7th Cir. 1989)).  The "winding-up" provision, §235, temporarily saved the USPC and the federal parole statutes for five years (until November 1, 1992).  Because many more prisoners have remained incarcerated under the old system than was originally predicted in 1984, Congress has repeatedly extended the period of time that the USPC and the federal parole statutes are to be "saved."

The most recent extension of the USPC occurred on September 29, 2005, when the United States Congress extended the life of the USPC for another three years.[5]  *See* U.S. Parole Commission Extension and Sentencing Commission Authority Act of 2005, P. L. 109-76, 119 Stat. 2035 (Sept. 29, 2005) (providing that the transition period provided for in §235(b) is extended to twenty-one years).  These extensions have taken the form of amendments to section 235(b)(3) itself (ultimately changing "five years" to "twenty-one years").  Thus, it is clear that the USPC's obligation to set final release dates has also been postponed and is now scheduled to take effect only shortly before November 1, 2008.

Thus, the Petitioner's reliance on the *Romano* case is misplaced.  Substituting the current expiration dates in the relevant passage from the *Romano* decision (which the Petitioner cited in his Reply, pp. 7-8), the language in *Romano* would read as follows:

> We hold that subsection of 235(b)(3) . . . is now in effect, and that it requires the Parole Commission to set parole release dates within the applicable guideline ranges only for prisoners who will be in prison on October 31, 2008, the day before the end of the . . . transition period, [and] that it requires no action by the Commission until a time sufficiently in advance of *November 1, 2008*, to afford prisoners an opportunity to pursue administrative remedies before *November 1, 2008* . . . .

---

[5] To the extent that the Commission had an affirmative obligation to set parole dates for any prisoners under Section 235(b)(3) of the SRA, it now has until October 31, 2008, in which to do so.

816 F.2d at 842 (modified and emphasis added by the undersigned as to relevant dates).

Given this history, the Court concludes that the Petitioner is not entitled to benefit from the leniency promised by the original version of section 235(b)(3) because that section does not place present obligations on the USPC. Rather, 235(b)(3) is merely a "winding-up" provision in conjunction with the USPC's actual abolition. *See Hackett v. U.S. Parole Commission, supra*, 851 F.2d at 134.

In *Hackett*, the Sixth Circuit found that the purpose of section 235(b)(3) was "to ensure that all federal prisoners would receive a fixed parole date prior to the expiration of the current parole system." The Sixth Circuit further held that the USPC's interpretation of section 235(b)(3) – that it was *not* required to make final parole release decisions until shortly before the expiration of the transitional period – was consistent with the purpose of the statute, the legislative history of the Act, and the subsequent judicial interpretations of section 235(b)(3). *Id.*

In the unpublished opinion issued by Judge David L. Bunning, this Court recognized that Congress has repeatedly extended the period of time that the "Commission and the federal parole statutes are to be 'saved,' and §235 is only applicable in the face of the USPC's imminent demise." *See Ulandis Forte v. Dan Dove, et al.*, Civil Action No. 04-427 (E.D. Ky. Order dated March 30, 2005), *aff'd.* Case No. 05-5689 (6th Cir. Nov. 29, 2005). Thus, the USPC has never been required to implement §235(b)(3) because the commencement of the winding-up process of setting final release dates has been repeatedly postponed by Congress. *See* Historical and Statutory Notes to 18 U.S.C. §3551; *Bledsoe v. U.S.*, 384 F.3d 1232, 1236 (10th Cir. 2004) (holding that the statute only affects those prisoners who will be incarcerated the day before the

Commission expires). In sum, the USPC's actual abolition is a necessary precondition for §235(b)(3) to take effect.

### 2. *Lyons v. Mendez* is Not Controlling Authority

The Third Circuit stands alone in holding that section 235(b)(3) created a present entitlement to release within the guideline range for prisoners like the Petitioner. *Lyons* concluded that section 235(b)(3) was not merely a winding-up provision that was not intended to immediately restrict the ability of the USPC to set a release date outside the guidelines. *See Lyons*, 303 F.3d at 291. Therefore, the Third Circuit concluded that section 235(b)(3) was immediately applicable to Lyons upon the 1984 enactment of the SRA, and that application of the 1987 amendment, which did not require a parole date within the parole guideline range, violated the *Ex Post Facto* Clause.

This Court will not follow *Lyons v. Mendez*, because that case failed to consider the effect of the 1990 and 1996 amendments which extended the time frame for the USPC's transition from five to ten years (in 1990), then from ten to fifteen years (in 1996).[6] *Lyons* was decided before Congress extended the USPC's existence for another three years in 2002 and for another three years in 2005. *Lyons* does not take into account that the USPC's existence has been extended and the USPC has never been required to implement section 235(b)(3).

---

[6] *See* the Judicial Improvements Act of 1990, Pub. L. No. 101-650, § 316, Stat. 5115 (Dec. 1, 1990), and the Parole Commission Phaseout Act of 1996, Pub. L. No. 104-232, §2(a), 110 Stat. 3055 (Oct. 2, 1996). The legislative history of the 1990 and 1996 amendments demonstrate Congress postponed the demise of the USPC in order to avoid *ex post facto* problems otherwise created if the USPC expired while prisoners who had been sentenced under the PCRA (the old law) were still confined without the opportunity for parole release or periodic parole reviews.

The *Lyons* analysis is deficient because it holds by implication that the five-year transition period in the original version of section 235(b)(3) was a fixed part of an offender's criminal punishment. This Court disagrees with the Third Circuit in this regard. Instead, this Court concludes that a criminal offender does not have a right, under the *Ex Post Facto* Clause, to the abolition of the USPC after a particular period of time.

*Lyons* simply is not controlling authority in either this Court or this Circuit, and the Petitioner's reliance on that decision is misplaced. The Sixth Circuit has consistently held that the USPC is not required to make final parole release decisions until shortly before the expiration of the transitional period, which directly contradicts the holding in *Lyons*. *See Hackett v. U.S. Parole Commission, supra*, at 132; Order in *Myles v. Dove*, Case No. 05-5527 (6th Cir. Oct. 27, 2005); Order in *Forte v. Dove, et al.*, Case No. 05-5689 (6th Cir. Nov. 29, 2005). Moreover, in two recent unreported opinions, this Court has rejected the same claim raised by other §2241 petitioners. *See Washington v. Reilly*, Civil Action No. 7:05-241 (E.D. Ky. Order dated February 10, 2006); *Forte v. Dove, et al.*, Civil Action No. 04-427 (E.D. Ky. Order dated March 30, 2005). Thus, the Court concludes that the Petitioner's legal argument does not constitute grounds to grant him relief under §2241. The petition, therefore, will be dismissed.

## CONCLUSION

Accordingly, it is **ORDERED** as follows:

(1) The §2241 petition for habeas corpus [Record No. 1] is **DENIED**. This action is **DISMISSED** with prejudice, *sua sponte,* from the docket of the Court.

(2) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Respondent D.L. Stine, the Warden of USP-McCreary.

This 19th day of July, 2006.

